IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-04-99 |
| | § | C.A. No. C-05-407 |
| FABIAN PEREZ, | § | |
|     Defendant/Movant. | § | |

**ORDER DISMISSING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE, AND
<u>DENYING CERTIFICATE OF APPEALABILITY</u>**

Pending before the Court is Fabian Perez's ("Perez") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 33),[1] which was received by the Clerk on August 15, 2005. On August 22, 2005, the Clerk received a letter from Perez explaining that he would be filing a memorandum in support of his motion. (D.E. 34). The letter was docketed as a motion for leave to supplement his motion and granted by the Court. (D.E. 34, 35). On September 26, 2005, the Clerk received Perez's supporting memorandum, (D.E. 36), which the Court has also considered.

The Court concludes that it is not necessary to order a government response because "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b) of the RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS. Perez's motion is subject to dismissal because he waived his right to file the sole claim he raises therein, a claim based on <u>United States v. Booker</u>, 125 S. Ct. 738 (2005). The motion is also subject to dismissal because <u>Booker</u> is not retroactively applicable on collateral review. Accordingly, a defendant like Perez, whose conviction became final before <u>Booker</u>

---

[1] Dockets entries refer to the criminal case, C-04-cr-99.

1

was issued, is not entitled to relief under that case.

For these reasons, discussed in more detail below, the Court DISMISSES the motion. Additionally, the Court DENIES Perez a Certificate of Appealability.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

## II. FACTS AND PROCEEDINGS

On March 10, 2004, Perez was charged in a single-count indictment with: (1) possession with intent to distribute approximately 46 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). (D.E. 1). On June 7, 2004, Perez pleaded guilty to the indictment pursuant to a written plea agreement. (D.E. 23, 24). In exchange for his guilty plea and his waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend that he receive maximum credit for acceptance of responsibility and to recommend a sentence at the low end of the applicable guideline range. (D.E. 24 at ¶¶ 1-2).

The plea agreement contained a voluntary waiver of Perez's right to appeal and to file a § 2255 motion:

> Defendant is aware that Title 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal only (a) the sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines, which had not been requested by the United States. Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 24 at ¶ 7) (emphasis in original).

At Perez's rearraignment, the prosecutor summarized the identical plea agreements of the defendants being rearraigned at that time. He specifically stated that: "Each agreement contains a provision whereby the defendant is waiving their rights to appeal their sentence and conviction ... [discussing exceptions to the appeal waiver]. Each agreement also contains a waiver of the defendant's rights to collaterally attack his sentence . . . under Title 28, United States Code Section 2255." (Digital Recording of June 7, 2004 Rearraignment ("R. Rec.") at 4:42:35-4:43:15). After that summary was given, Perez testified that the summarized agreement was his, that it was complete, and that it was correct. Perez also reviewed the written agreement. He testified that it was his agreement, that he signed the last page, and that he had read it and discussed it completely with his attorney before he signed it. (R. Rec. at 4:47:58-4:48:07).

The Court questioned Perez under oath at the rearraignment to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily relinquishing his appeal rights and right to file a § 2255 motion. In ensuring that his waiver of § 2255 rights was voluntary, the Court asked Perez:

> **THE COURT:** I want to go over with you a couple of things. First, that you're giving up two very important rights: the right to appeal and the right to a post-conviction remedy, which are your rights alone, only you can give them up. They're very important rights. They belong to you and not to your attorney.
>
> . . . [Discussing right to appeal].
>
> And for the 2255, that is, the post-conviction remedy. You can ... you would have had that right completely apart from your right to appeal wherein you could have challenged your conviction, try to set aside your conviction or sentence because of jurisdictional, constitutional, or such matters as ineffective assistance of counsel. If you go forward today, you give up that right forever. Do you understand that? ... Mr. Perez?
>
> **DEFENDANT:** Yes, Your Honor.

(R. Rec. at 4:44:26-4:46:04). Perez further testified that no one had made him any promises other than

3

those contained in the written plea agreement. (R. Rec. at 4:46:05-4:46:46). It is clear from the foregoing that Perez's waiver was knowing and voluntary. See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

The Court sentenced Perez on August 16, 2004 to 59 months in the custody of the Bureau of Prisons, to be followed by a three-year term of supervised release, and imposed a $500 fine and a $100 special assessment. (D.E. 30, 31). Judgment of conviction and sentence was entered September 1, 2005. (D.E. 31). Consistent with his waiver of appellate rights, Perez did not appeal. His § 2255 motion was received by the Clerk on August 15, 2005. (D.E. 33). It is timely.

### III. MOVANT'S ALLEGATIONS

As previously noted, Perez asserts only a single claim for relief. Specifically, he argues that this Court was without jurisdiction to enhance his sentence based on drug amounts not charged in the indictment or admitted at the plea colloquy. In support of his claim, he relies on Booker, 125 S. Ct. 738. He claims that his Sixth Amendment rights were violated because he was sentenced based on an additional 68 kilograms of marijuana as relevant conduct under U.S.S.G. § 1B1.3, but only admitted at his rearraignment to possession of 46 kilograms. He asks that his sentence be vacated and that he be re-sentenced consistent with Booker under the now-advisory guidelines and that the Court re-sentence him based on 46 kilograms only. (D.E. 33).

### IV. DISCUSSION

**A.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's

4

jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

The Court need not address whether Perez has procedurally defaulted his claim by failing to appeal. Rather, the Court concludes that he waived the sole claim he raises in his § 2255 motion. United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights); United States v. McKinney, 406 F.3d 744 (5th Cir. 2005) (enforcing, post-Booker, a waiver of appeal rights that was signed prior to the issuance of Booker).

**B.      Waiver of § 2255 Rights**

It is clear from the rearraignment recording that Perez understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for a knowing waiver. See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up). Perez's sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)); Wilkes, 20 F.3d at 653 (citing Blackledge for same proposition). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Those statements here clearly support a finding that Perez's wavier was knowing and voluntary. His claim falls within the scope of that waiver. Thus, it is not properly before the Court. See generally Wilkes, supra;

White, supra.

Moreover, the fact that Booker was not decided until after Perez signed his waiver does not place his claim outside the scope of the waiver. The Fifth Circuit has clearly held that "Blakely[2] and Booker do not alter the plain meaning of appeal-waiver provisions in valid plea agreements." McKinney, 406 F.3d at 746-47 & n.5; see also, e.g., United States v. Killgo, 397 F.3d 628, n.2 (8th Cir. 2005) (enforcing waiver of appeal rights as to Sixth Amendment claim, noting that "[t]he fact that [defendant] did not anticipate the Blakely or Booker rulings does not place the issue outside the scope of his waiver"); United States v. Rubbo, 396 F.3d 1330, 1335 (11th Cir. 2005) (upholding waiver of appeal rights signed prior to Blakely in case raising Booker claim); United States v. Bradley, 400 F.3d 459, 465-66 (6th Cir. 2005) (enforcing defendant's waiver of appeal signed prior to Booker as barring his Booker claim and collecting federal circuit court authority in agreement).

For all of the foregoing reasons, Perez's motion is barred by his waiver and is therefore DISMISSED WITH PREJUDICE.

**C.    Availability of Relief Under Booker**

Even if Perez had not waived his right to file the claims in his § 2255 motion, his claim relies entirely on Booker. Perez's conviction became final, however, prior to the issuance of the Booker decision on January 12, 2005. Thus, he would be entitled to relief under Booker only if the case applied retroactively. The Court concludes herein that Booker is not retroactive, and thus Perez is not entitled to relief under Booker. Accordingly, his motion is subject to dismissal for this additional reason, as well.

---

[2] Blakely v. Washington, 124 S. Ct. 2531 (2004), Booker's predecessor, dealt with a state's sentencing guidelines. The Booker court extended the reasoning of Blakely to the federal guidelines.

### 1. <u>Booker</u> Background

To explain the Court's conclusions regarding the retroactivity of <u>Booker</u>, some background regarding both it <u>Blakely</u> is warranted. In <u>Blakely</u>, the Supreme Court held that the trial court's sentencing of the state defendant violated his Sixth Amendment right to a jury trial. Specifically, the court held that <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and other precedents preclude a judge from utilizing a fact found by him using a preponderance of the evidence standard, in order to impose more than the maximum sentence that could be imposed based solely on the facts reflected in the jury verdict or admitted by the defendant. <u>Blakely</u>, 124 S. Ct. at 2537-38. <u>Blakely</u> involved a defendant sentenced in a Washington state court pursuant to Washington's determinate sentencing scheme. <u>See generally</u> <u>id.</u>

<u>Booker</u> addressed <u>Blakely</u>'s impact on the federal sentencing guidelines, which are applied in federal criminal cases. <u>Booker</u> consists of two majority decisions. In the first majority opinion, authored by Justice Stevens, the Court held that <u>Blakely</u> applied to the federal guidelines. As with the sentencing scheme at issue in <u>Blakely</u>, the mandatory nature of the federal sentencing guidelines implicated defendants' Sixth Amendment rights, because the guidelines can require judges to find facts and sentence defendants to more severe sentences than could be imposed based solely on facts found by the jury or admitted in the plea colloquy. <u>Booker</u>, 125 S. Ct. at 750-51, 756.

In the second majority opinion, authored by Justice Breyer, the Supreme Court discussed the remedy to be applied in light of its first holding. The remedy selected by the majority of the justices was to excise certain portions of the guidelines (most notably the provision making them mandatory, 18 U.S.C. § 3553(b)(1), and a provision dealing with appeals from sentencing decisions, 18 U.S.C. § 3742(e)), but to preserve the scheme as a whole. <u>Booker</u>, 125 S. Ct. at 756-57. As a result, the Court's decision rendered the guidelines "effectively advisory." <u>Id.</u> at 757. The court held, however,

that district courts are required to consider the advisory guideline sentence when sentencing within the statutory ranges set by Congress. Id.

**2.    Retroactivity Analysis**

Neither of the majority opinions states that Booker should be applied retroactively to convictions and sentences that are already final. Instead, Justice Breyer's decision concerning the proper remedy simply indicates that Booker's holdings should be applied "to all cases on direct review." Booker, 125 S. Ct. at 769 (emphasis added).[3]

The Fifth Circuit has held that the Supreme Court has not made Booker retroactive, for purposes of allowing second or successive petitions under 28 U.S.C. § 2255. In re Elwood, 408 F.3d 211 (5th Cir. 2005). Additionally, in the context of discussing whether a claim fell within the savings clause of § 2255, a panel of the Fifth Circuit has recently stated: "Like Apprendi, Booker's holding is not retroactively applicable to cases on collateral review." Padilla v. United States, 416 F.3d 424, 427 (5th Cir. 2005). The Padilla decision does not contain any analysis or discussion as to how the court reached this conclusion. Rather, the decision simply cites to the first page of the Booker decision for authority, as well as to a case decided prior to Booker, Wesson v. U.S. Penitentiary Beaumont, TX, 305 F.3d 343, 347 (5th Cir. 2002), neither of which states that Booker does not apply retroactively. Nonetheless, to the extent the opinion was intended to address the precise issue before the Court here,[4] it directs that Booker is not retroactively applicable.

---

[3] The Court recognizes, of course, that retroactivity was not an issue in Booker or its companion case, Fanfan, both of which came to the Supreme Court as direct criminal appeals. Thus, the quoted language arguably has no meaning as to Booker's retroactivity in collateral proceedings.

[4] As noted, the Padilla court's statement was made in the context of discussing whether a defendant's claims fell within the scope of the savings clause of § 2255. In order to show that his claims fell within the savings clause, the movant had to show that he was asserting a claim of actual innocence "(1) that is based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a nonexistent offense and (ii) that was foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal

8

Notably, the Padilla court's conclusion is consistent with every other federal court of appeals to have addressed the issue directly. Specifically, the Second, Third, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits have all addressed the retroactivity of Booker on initial collateral review and have concluded that Booker does not apply retroactively. See McReynolds v. United States, 397 F.3d 479 (7th Cir. 2005) (concluding that Booker states a new non-watershed procedural rule and does not apply retroactively to criminal cases final before its release); United States v. Humphress, 398 F.3d 855 (6th Cir. 2005) (same); Varela v. United States, 400 F. 3d. 864 (11th Cir. 2005) (same); Guzman v. United States, 404 F.3d 139 (2d Cir. 2005) (same); Lloyd v. United States, 407 F.3d 608 (3d Cir. May 17, 2005) (same); United States v. Bellamy, 411 F.3d 1182 (10th Cir. 2005) (same); Never Misses a Shot v. United States, 413 F.3d 781 (8th Cir. 2005) (same); United States v. Cruz, __F.3d __, 2005 WL 2243113 (9th Cir. Sept. 16, 2005) (*per curiam*) (same).[5]

The Court agrees with the reasoning set forth in the foregoing cases. In particular, the Court concludes that the Supreme Court's decision in Schriro v. Summerlin, 124 S. Ct. 2519 (2004), handed down the same day as Blakely, is highly pertinent to the issue of Booker and Blakely retroactivity. In Schriro, the Supreme Court was faced with determining whether its decision in Ring v. Arizona, 536 U.S. 584 (2002), could be applied retroactively on collateral review. Ring, like Blakely, applied the principles of Apprendi. In Ring, the Court held that a jury must find the aggravating facts statutorily required to impose the death penalty. In Schriro, the Court first concluded that Ring was

---

or first § 2255 motion." Padilla, 416 F.3d at 426 (quoting Reyes-Requena v. United States, 243 F.3d 893 (5th Cir. 2001)). Despite its broad language, the lack of any analysis suggests that it may not have been intended to directly address the more complicated issue of whether Booker is retroactive on initial collateral review outside the context of § 2255's savings clause.

[5] The First Circuit has taken a slightly different approach. See Cirilo-Munoz v. United States, 404 F.3d 527 (1st Cir. 2005) (holding that Booker claims cannot be advanced under § 2255 in the absence of a Supreme Court decision rendering Booker retroactive).

a new rule of procedure (as opposed to a substantive rule), and noted the general principle that new rules of procedure do not apply retroactively. 124 S. Ct. at 2522-23. It then determined that the rule in Ring did not fall within any of the narrow exceptions to the general principle, as set forth in Teague v. Lane, 489 U.S. 288 (1989), including the exception for "watershed rules of criminal procedure" essential to the fairness of the proceedings. Schriro, 124 S. Ct. at 2524-25. It concluded, therefore, that "Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review." Schriro, 124 S. Ct. 2526.

This Court finds the reasoning in Schriro to be persuasive and pertinent here. Like the rule in Ring, the rule announced in Blakely (and extended to the federal guidelines in Booker) is a new rule of procedure, but does not fall within any of the Teague exceptions.

The Court recognizes, however, that Schriro did not address the evidentiary standard issue in Blakely, i.e., the portion of the holding that requires facts increasing a sentence to be found beyond a reasonable doubt, rather than by a simple preponderance standard. Rather, the Schriro court determined the retroactivity of a rule delineating who the factfinder should be (i.e., judge versus jury).

As the Seventh and Third Circuits noted in addressing Booker's retroactivity, however, the determination of whether or not the evidentiary standard is a "watershed" rule of procedure that should be applied retroactively would be a more difficult one if only the first majority opinion existed in Booker. See McReynolds v. United States, 397 F.3d 479 (7th Cir. 2005); Lloyd v. United States, 407 F.3d 608 (3d Cir. 2005). As these courts have noted, however, the remedy selected by the second Booker majority "held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence." McReynolds v. United States, 397 F.3d at 481; see also Lloyd, 407 F.3d at 615 ("It would be one thing if we were only dealing with Justice Stevens's opinion in Booker," but "[b]y creating an advisory federal sentencing regime, the Booker Court did not announce

10

a new rule of criminal procedure that significantly increases the 'certitude' or 'accuracy' of the sentencing process.").

The McReynolds court further explained:

> As a practical matter, then, petitioners' sentences would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system. That is not a 'watershed' change that fundamentally improves the accuracy of the criminal process.

397 F.3d at 481. The Court finds the reasoning of Floyd and McReynolds on this point persuasive.

For all of the foregoing reasons, the Court concludes that Booker is not retroactive to cases on collateral review. Because Gonzalez's conviction became final prior to the date Booker was decided, January 12, 2005, he is not entitled to relief under Booker. His motion is DISMISSED for this reason, as well.

**D**.     **Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Perez has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v.

Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (emphasis added); see also United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (applying Slack to COA determination in context of § 2255 proceedings). It is unnecessary for the Court to decide whether Perez has stated a valid claim for relief, because he cannot establish the second Slack criterion. That is, reasonable jurists would not disagree that the claim raised in his motion are barred due to his waiver, nor could they disagree that Booker is not retroactive. Accordingly, Perez is not entitled to a COA.

## V.  CONCLUSION

For the foregoing reasons, Perez's motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255 (D.E. 33) is DISMISSED WITH PREJUDICE. Additionally, Perez is DENIED a Certificate of Appealability.

Ordered this 30th day of October 2005.

_____
Janis Graham Jack
United States District Judge